# SHAVER *v.* NEWDICK.

PATENTS; INTERFERENCE; ALTERNATIVE OPERATION.

In an interference proceeding the issues of which recite in combination a motor having a driving connection with a device for winding and paying out a flexible conductor of current to the propelling motor of a moving vehicle, and exerting upon such device a winding torque during the movement of the vehicle "in either direction," the claim of the senior applicant will not be denied, merely because his device contemplates alternative operation, in that no winding torque is exerted while the vehicle is so moving so as to unwind the conductor, his motor, when energized, being capable of exercising a winding torque irrespective of the direction in which the vehicle moves.

Patent Appeals No. 815. Submitted March 10, 1913. Decided April 7, 1913.
    Vol. XL.—18.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are stated in the opinion.

*Mr. Albert G. Davis, Mr. Arthur A. Buck,* and *Mr. Frank J. Seabolt* for the appellant.

*Mr. H. H. Bliss* and *Mr. S. J. Teller* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding, awarding priority of invention to Norton A. Newdick, the senior party. The counts of the issue are four in number, and read as follows:

"1. In combination, a vehicle adapted to move in forward and reverse directions, a winding device carried by said vehicle, and an electric motor having a driving connection and arranged to exert a winding torque upon said winding device during the movement of the vehicle in either direction.

"2. In combination, a movable vehicle, a winding device for a flexible conductor carried by said vehicle, an electric motor having a driving connection with said winding device, a motor for driving said vehicle, and switch mechanism arranged to connect the motor for propelling the vehicle to the said conductor for rotation in either direction, and to connect the other motor to the said conductor for rotation only in a direction to exert a winding torque upon said winding device.

"3. In combination, a movable vehicle, a winding device carried thereby, a flexible conductor on said winding devise, means for securing the free end of said conductor to a fixed conductor, an electric motor having a driving connection with said winding device, and means for connecting said motor to said flexible conductor for operation in a direction to exert a winding torque upon said winding device during the movement of the vehicle in either direction.

"4. In combination, a movable vehicle, a winding device carried thereby, a flexible conductor on said winding device, means for securing the free end of said conductor to a fixed conductor, an electric motor having a driving connection with said winding device, and means for connecting said motor to said flexible conductor for operation in a direction to exert a winding torque upon said winding device during the movement of the vehicle in either direction, the arrangement being such that the motor tends to wind up the flexible conductor at a greater rate than the rate of movement of the vehicle."

The invention relates to means for controlling the flexible conductor through which current is supplied to the motor of an electric mining locomotive when such locomotive is operated over tracks not provided with a trolley wire. In the prior art the same sort of flexible conductor was used. This was adapted, as in the present invention, to be connected at one end to a fixed conductor, which was connected at the other end so as to be unwound from and wound upon a reel carried by the locomotive, but electric connections were provided between the reel end of the cable and the locomotive motor. In other words, in the old type of locomotive a single motor was used. To overcome certain objections said to result from the use of a single motor, the present invention was made. In this invention there is no connection between the driving motor and the reel, an entirely separate and independent motor being provided for controlling the rotation of the reel. This departure from the prior art is the dominant feature of the invention.

The Newdick application was filed Nov. 29, 1905; that of Harry W. Shaver June 7, 1906. A patent was inadvertently issued to Shaver May 14, 1907, but that need not concern us here, since the applications were co-pending. Neither party has taken testimony. The claims of the issue were copied by Newdick from the Shaver patent, and it is conceded, of course, that if Newdick may rightfully make these claims the decision of the Commissioner must be affirmed.

A motion to dissolve the interference on the ground that Newdick has no right to make the claims was first considered by

the Examiner, and the motion was overruled.  The Examiner of Interferences sustained the motion as to counts 1, 3, and 4, but overruled it as to count 2.  On appeal the Examiners-in-Chief reversed the decision as to counts 3 and 4, awarding priority to Newdick as to counts 2, 3, and 4.  The Commissioner awarded priority to Newdick as to all the counts.  There was unanimity in the Patent Office, therefore, as to count 2.  The Examiner of Interferences found that Newdick's real motor is not capable of exerting a winding torque upon the winding device when the locomotive is moving in a direction to unwind the cable; that is, that the reel motor does not then tend to cause the reel to revolve in a direction to *wind* the cable.  The Examiner therefore concluded that this motor is not connected and arranged to exert a winding torque upon the winding device during the moving of the vehicle *in either direction,* as called for by counts 1, 3, and 4.  The Examiners-in-Chief did not question that when Newdick's real motor is energized it will exert a winding torque upon the winding device, irrespective of the movement of the vehicle, but they were of the opinion that count 1 calls for a construction which will not admit of an alternative operation.  The Commissioner directed attention to the fact that the claims in issue cover an apparatus, and not a process or mode of operating an apparatus.  He further directed attention to the well-established rule that an inventor is entitled to all the uses of which his invention is capable, whether fully described or not.  He then said: "Owing to the fact that the reel motor in Newdick's application is connected to the reel by a worm gearing the motor is not driven backward when the cable is paid out, as in Shaver's device, but the slipping takes place between the two elements of the friction clutch.  However, if the motor is energized while the cable is being paid out, the motor will exert a winding torque upon the reel; that is, there will be a tendency to turn the reel in a winding direction, although, owing to the tension of the cable caused by the fact that the locomotive is being propelled in a direction away from the point of support of the flexible conductor, the reel is being unwound."  We fully agree with this

finding, and inasmuch as Newdick's device is clearly capable of being operated in such a way as to respond to these claims, they ought not to be granted to a junior party. As previously suggested, the dominant idea of the claim is the separate motor, and it would be indulging in too great refinement to make the award of priority depend upon the opening or closing of a switch.

The decision is affirmed.                    *Affirmed.*